```
-----------------------------x
                             :
MAYRA ENID YULFO-REYES       :    Civ. No. 3:17CV02015(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :    November 8, 2018
ACTING COMMISSIONER, SOCIAL  :
SECURITY ADMINISTRATION      :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Mayra Enid Yulfo-Reyes ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative to remand for further proceedings. [Doc. #32]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #34].

For the reasons set forth below, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #34**] is **DENIED,** and plaintiff's Motion for Order of Reversal, or in the Alternative Remand for Further Proceedings [**Doc. #32**] is

**GRANTED.** The Court **REVERSES** the decision of the Commissioner and hereby **REMANDS** this matter for a calculation and award of benefits.

## I. PROCEDURAL HISTORY[1]

Plaintiff filed concurrent applications for Disability Insurance Benefits ("DIB") and SSI on December 18, 2009, alleging disability beginning September 18, 2007. See Certified Transcript of the Administrative Record, Doc. #16, compiled on January 11, 2018, (hereinafter "Tr.") at 203; Tr. 215; Tr. 541-52. Plaintiff's application for DIB was denied on January 16, 2010, because it was determined that plaintiff did "not qualify for disability benefits because [she] had not worked long enough under Social Security." Tr. 257. Plaintiff did not seek reconsideration of that decision. Plaintiff's application for SSI was denied initially on April 21, 2010, see Tr. 261-64, and upon reconsideration on September 3, 2010, see Tr. 268-70. The only application now under consideration is for SSI.

Following the denial of plaintiff's SSI application, on November 15, 2011, and May 22, 2012, plaintiff, represented by Attorney Veronica Halpine, appeared and testified at two separate hearings before Administrative Law Judge Bruce H. Zwecker ("ALJ Zwecker"). See Tr. 119-50; Tr. 151-65 (repeated at

---

[1] Each party filed a statement of facts. See Docs. #32-2, #19.

Tr. 1800-31 and Tr. 1832-46). On June 22, 2012, ALJ Zwecker issued an unfavorable decision. See Tr. 228-51. On July 10, 2012, plaintiff filed a Request for Review of ALJ Zwecker's June 22, 2012, decision. See Tr. 399-401. On June 17, 2013, the Appeals Council ordered remand of plaintiff's case to an ALJ for the resolution of certain outstanding issues. See Tr. 252-56; see also Tr. 402-11.

Following the Appeals Council's remand, on April 22, 2014, plaintiff, again represented by Attorney Halpine, appeared and testified at a third hearing before ALJ Zwecker. See Tr. 166-202 (repeated at Tr. 1847-83). On October 27, 2014, ALJ Zwecker issued a second unfavorable decision. See Tr. 97-118 (repeated at Tr. 1648-69). Thereafter, plaintiff filed a Request for Review of ALJ Zwecker's October 27, 2014, decision. See Tr. 96 (repeated at Tr. 1696). On June 4, 2015, the Appeals Council denied plaintiff's request for review, thereby making ALJ Zwecker's October 27, 2014, decision the then-final decision of the Commissioner. See Tr. 1-8 (repeated at Tr. 1670-77).

On June 22, 2015, plaintiff, still represented by Attorney Halpine, filed a complaint in the United States District Court for the District of Connecticut seeking review of ALJ Zwecker's October 27, 2014, decision. See Tr. 1642-47; see also Yulfo v. Colvin, No. 3:15CV952(SALM) (D. Conn. June 22, 2015). On May 18,

2016, defendant filed a Consent Motion to Remand to Agency Under Sentence Four of 42 U.S.C. §405(g). See <u>Yulfo v. Colvin</u>, No. 3:15CV952(SALM), Doc. #28 (D. Conn. May 18, 2016). After the parties consented to the jurisdiction of the undersigned, the Court granted that motion. <u>See</u> Tr. 1678-80; <u>see also</u> <u>Yulfo v. Colvin</u>, No. 3:15CV952(SALM), Docs. #30, #32 (D. Conn. May 20, 2016). Following this Court's remand, on June 8, 2016, the Appeals Council issued a Notice of Order of Appeals Council Remanding Case to Administrative Law Judge. <u>See</u> Tr. 1681-88; Tr. 1712-32.

Following the Appeals Council's second remand of plaintiff's case, on January 26, 2017, plaintiff, again represented by Attorney Halpine, appeared and testified at a <u>fourth</u> hearing before a different administrative law judge, John Noel (hereinafter the "ALJ" or "ALJ Noel"). <u>See</u> Tr. 1603-41. Vocational Expert ("VE") Renee Jubry also testified at the hearing by telephone. <u>See</u> Tr. 1633-39; <u>see also</u> Tr. 1897-99. On April 4, 2017, ALJ Noel issued an unfavorable decision. <u>See</u> Tr. 1571-1602. On October 10, 2017, the Appeals Council denied plaintiff's request for review, thereby making ALJ Noel's April 4, 2017, decision the final decision of the Commissioner. <u>See</u> Tr. 1564-70. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, who initially appeared as a self-represented party, timely filed this action for review. <u>See</u> Doc. #1. Plaintiff, now represented by <u>pro</u> <u>bono</u> counsel, moves to reverse the Commissioner's decision, or in the alternative, to remand for further proceedings. [Doc. #32]. On appeal, plaintiff argues:

1. The ALJ's step two findings are not supported by substantial evidence;

2. The ALJ erred at step three of the sequential evaluation;

3. The ALJ failed to properly weigh the medical opinion evidence;

4. The ALJ's decision is contrary to the law because his findings as to plaintiff's Residual Functional Capacity ("RFC") are not consistent with the description of light work;

5. The ALJ failed to examine the VE's testimony in compliance with the Appeals Council's June 8, 2016, remand order; and

6. The medical vocational guidelines mandate a finding of disabled based on the RFC determination.

<u>See generally</u> Doc. #32-1.[2] As set forth below, the Court finds
that ALJ Noel's decision is not supported by substantial
evidence of record.

## II.  <u>**STANDARD OF REVIEW**</u>

The review of a Social Security disability determination
involves two levels of inquiry. <u>First</u>, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. <u>Second</u>, the Court must decide whether
the determination is supported by substantial evidence. <u>See</u>
<u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation
omitted). Substantial evidence is evidence that a reasonable
mind would accept as adequate to support a conclusion; it is
more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S.
389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305
U.S. 197, 229 (1938)). The reviewing court's responsibility is
to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u>
<u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation
omitted).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to

---

[2] The Court has re-ordered the sequence in which plaintiff's
arguments appear in her brief.

apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-

61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u></u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." <u>Smith v. Comm'r</u>, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was

filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that the

impairment "significantly limit[] ... physical or mental ability

to do basic work activities" to be considered "severe"

(alterations added)).

There is a familiar five-step analysis used to determine if

a person is disabled. <u>See</u> 20 C.F.R. §416.920. In the Second

Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per</u>

<u>curiam</u>). If and only if the claimant does <u>not</u> have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work

which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given [her] residual functional capacity." Gonzalez ex rel.

Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243

(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155

(Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.

2009) (per curiam)). The RFC is what a person is still capable

of doing despite limitations resulting from her physical and

mental impairments. See 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

"[E]ligibility for benefits is to be determined in light of the

fact that 'the Social Security Act is a remedial statute to be

broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

IV. **THE ALJ'S DECISION**

Following the above-described five-step evaluation process,
the ALJ concluded that since the application date of December
18, 2009, plaintiff was not disabled under the Act. See Tr.
1592. At step one, the ALJ found that plaintiff had not engaged
in substantial gainful activity since the application date of
December 18, 2009. See Tr. 1579. At step two, the ALJ found that
plaintiff had the severe impairments of: degenerative disc
disease; diabetes mellitus; obesity; major depressive disorder;
and anxiety. See id. The ALJ found plaintiff also suffered from
the following non-severe impairments: macular degeneration;
sleep apnea; and asthma. See Tr. 1579-80.

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of any of the listed impairments in 20 C.F.R. Pt.
404, Subpt. P, App. 1. See Tr. 1580-82. The ALJ specifically
considered Listings 1.04 (disorders of the spine), 12.04
(affective disorders), and 12.06 (anxiety related disorder). See
id. At step three the ALJ also

> considered any resulting complications and/or
> limitations that might stem from the claimant's diabetes
> such as peripheral neurovascular disease leading to
> gangrene and subsequent amputation under 1.00 listings;

> diabetic retinopathy under the 2.00 listings; coronary
> artery disease or peripheral vascular disease under the
> 4.00 listings; diabetic gastroparesis under the 5.00
> listings; diabetic neuropathy under the 6.00 listings;
> bacterial and fungal skin infections under the 8.00
> listings; diabetic peripheral and sensory neuropathies
> under the 11.00 listings; and cognitive impairment,
> depression or anxiety under the 12.00 listings.

Tr. 1580 (sic).

Before moving on to step four, the ALJ found plaintiff

had the RFC

> to perform light work as defined in 20 CFR 416.697(b)
> except she can frequently climb ramps and stairs, never
> climb ladders, ropes or scaffolds, occasionally balance,
> frequently stoop, occasionally kneel, occasionally
> crouch, occasionally crawl; can have only occasional
> exposure to extreme heat and only occasional exposure to
> odors, dusts, fumes and other pulmonary irritants; can
> perform simple routine tasks, but not at a production
> pace, can use judgment limited to simple work related
> decisions, can deal with routine changes in the work
> environment; and can communicate in English, but can
> only read English at a first grade level.

Tr. 1582. At step four, the ALJ concluded that plaintiff was

unable to perform her past relevant work as a certified nurse

assistant ("CNA"). See Tr. 1590. At step five, and after

considering plaintiff's age, education, work experience and RFC,

as well as the testimony of the VE, the ALJ found that other

jobs existed in significant numbers in the national economy that

plaintiff could perform. See Tr. 1591-92.

## V.  **DISCUSSION**

Plaintiff raises several arguments in support of reversal or remand. See generally Doc. #32-1. Before addressing those arguments, the Court first pauses to note two general considerations applicable to the discussion below.

First, plaintiff seeks review only of the decision to deny her application for SSI. There is no claim for DIB at issue. Accordingly, throughout this decision, the Court refers to and applies only those Regulations applicable to SSI. The Court is compelled to note this as plaintiff occasionally references the Regulations applicable to DIB in her brief. See, e.g., Doc. #32-1 at 11 (quoting 20 C.F.R. §404.1563); id. at 22 (quoting 20 C.F.R. §404.1513(d)); id. at 23 (quoting 20 C.F.R. §404.1512(b)(5)).

Second, the parties agree that the Court is considering a closed period of disability, from the date of plaintiff's SSI application, December 18, 2009, through August 28, 2015, the date of plaintiff's second SSI application, on which she was awarded benefits. See Doc. #32-1 at 3; Doc. #34-1 at 1 n.1; see also Tr. 1698-1711 (Notice of Award as to August 28, 2015, SSI application).

Bearing the above in mind, the Court turns to the parties' respective arguments, beginning with a consideration of whether

the ALJ's RFC determination is supported by substantial evidence
of record.

A.    The RFC Determination

The Court construes plaintiff's brief as contending that
the ALJ's physical RFC determination is not supported by
substantial evidence. See generally Doc. #32-1. Plaintiff
appears to take issue specifically with the ALJ's determination
that she was capable of light work and could read English at a
first grade level. See Doc. #32-1 at 8-11, 26; see also Doc.
#35, plaintiff's reply brief. Defendant generally responds that
the ALJ's RFC determination is supported by substantial
evidence. See generally Doc. #34-1 at 9-14, 18-22.

Plaintiff's RFC is "the most [she] can still do despite
[her] limitations." 20 C.F.R. §416.945(a)(1). The RFC is
assessed "based on all the relevant evidence in [the] case
record[,]" including "all of the relevant medical and other
evidence." 20 C.F.R. §§416.945(a)(1), (3).

1.    Production Pace

Plaintiff first contends that the ALJ's conclusion that she
is capable of light work "is fatally flawed" because the
Dictionary of Occupational Titles ("DOT") defines "light work"
as requiring work performed at a production pace. Doc. #32-1 at
7-8. Defendant responds that plaintiff is "mistaken" and that

the DOT's definition of light work does not require performance at a production rate pace for every job classified at the light exertional level. Doc. #34-1 at 18-19.

Plaintiff's argument relies on the plain language of the following definition of light work:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

Dep't of Labor, <u>Dictionary of Occupational Titles</u> 1013 (4th ed., rev. 1991). Plaintiff focuses on subsection (3) cited above and asserts that <u>all</u> work categorized at the light exertional level requires work at a production rate pace. <u>See</u> Doc. #32-1 at 8. That reasoning is flawed. The plain language of the above definition does not require performance of all light work at a production pace. Rather, the above-cited definition of light work provides for performance at a production rate pace in the alternative, not in the conjunctive. <u>See</u> <u>Potts v. Astrue</u>, No. 12CV229(GCH), 2013 WL 5785659, at *6 (S.D. Tex. Feb. 19, 2013) (The DOT's definition of light work does "not contain a

requirement that the work be done at a 'production' pace."),
report and recommendation adopted, 2013 WL 12106129 (Mar. 28,
2013). Accordingly, the definition of "light work" cited by the
plaintiff does not conflict with the ALJ's RFC determination
limiting plaintiff to a light exertional level. See id. Indeed,
courts within this Circuit have affirmed RFC determinations
limiting a claimant to light work at a non-production rate pace.
See, e.g., DiBlasi v. Comm'r of Soc. Sec., 660 F. Supp. 2d 401,
408 (N.D.N.Y. 2009); Cirino Matos v. Colvin, No.
5:14CV0834(GTS)(DJS), 2016 WL 1253589, at *3 (N.D.N.Y. Mar. 15,
2016), report and recommendation adopted sub nom. Cirino-Matos
v. Colvin, 2016 WL 1261105 (Mar. 30, 2016). Thus, there is no
reversible error on that point.

    *2. Light Work*

Plaintiff asserts that "the ALJs' finding of fact with
respect to residual functional capacity compels the conclusion
that the plaintiff is capable of only Sedentary Work." Doc. #32-
1 at 8 (sic). Defendant responds that the RFC determination is
supported by substantial evidence of record. See Doc. #34-1 at
9-14. Because plaintiff challenges only the physical aspect of
the RFC determination (other than her ability to read in
English, discussed infra), the Court does not address the mental
RFC determination herein.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §416.967(b). Social Security Ruling 83-10 further explains:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

Applying this standard, substantial evidence does not support the ALJ's finding that plaintiff is capable of light work. Notably, the ALJ primarily relies on the opinions of the non-examining state agency consultants to support his RFC determination. See Tr. 1590; see also Tr. 203-12 (initial level Disability Determination Explanation containing state agency consultant opinion); Tr. 215-27 (reconsideration level Disability Determination Explanation containing state agency consultant opinions). With respect to those opinions, ALJ Noel

stated:

> The undersigned afford great weight to the majority of the state agency consultants' opinions. The consultants found that the claimant was able to perform light work with mental limitations. Exhibits 1A, 4A. The treatment notes submitted since they rendered their opinions does not show that the claimant's conditions have worsened. Rather, the claimant's treatment notes show that the claimant's physical symptoms improved with physical therapy and medication. Exhibits 38F, 50F. Their opinions are also consistent with the minimal findings of Dr. Mueller. Exhibit 4F. Moreover, their opinions are consistent with the claimant's level of daily exertion, which as stated above, involves performing household chores, caring for herself and performing childcare at times.

Tr. 1590 (sic). That statement, and the ALJ's reliance on the state agency consultants' opinions, is problematic for several reasons.

As an initial matter, the state agency consultants rendered their opinions without the benefit of either (1) any of the opinions of plaintiff's treating sources, or (2) five years of medical records. Each of the state agency consultants' opinions was authored in 2010, and relied upon a review of medical evidence that pre-dated their opinions. See generally Tr. 203-12; Tr. 215-27. As previously noted, the relevant time frame for this matter is from the date of plaintiff's SSI application, December 18, 2009, through August 28, 2015, the date of plaintiff's second SSI application. The record before the ALJ and now this Court contains evidence spanning that time frame

and beyond. Because the state agency consultants' opinions were not based on a full record, the ALJ should not have relied heavily upon them. See, e.g., Tarsia v. Astrue, 418 F. App'x 16, 18 (2d Cir. 2011) ("Because it is unclear whether [the state agency medical consultant] reviewed all of Tarsia's relevant medical information, his opinion is not 'supported by evidence of record' as required to override the opinion of [the] treating physician[.]"); Jazina v. Berryhill, No. 3:16CV1470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017) ("The ALJ erred in assigning significant weight to the state agency medical consultants' under-informed opinions and in allowing their opinions to override those of plaintiff's treating physicians."); Beutel v. Berryhill, No. 3:17CV1193(SALM), 2018 WL 3218662, at *7 (D. Conn. July 2, 2018) ("The opinion of the non-examining physician ... was rendered without the benefit of plaintiff's missing treatment records. It was also rendered without the benefit of [the treating source's] opinions. Because that opinion was not based on a full record, the ALJ should not have relied heavily on it."); see also 20 C.F.R. §416.927(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will

evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.").

The ALJ attempts to justify his reliance on the state consultants' opinions as follows: "The treatment notes submitted since [the state agency consultants] rendered their opinions does not show that the claimant's conditions have worsened." Tr. 1590. That assertion is not supported by substantial evidence. The medical records reviewed by the state agency consultants, which date from December 2009 to 2010, see Tr. 206-27, Tr. 216-17, do not reveal significant limitations in plaintiff's gait or reflect her need to ambulate with an assistive device. See, e.g., Tr. 789 (May 24, 2010, treatment note: Plaintiff "likes to walk; pt c/o pain in legs and back it inhibits her from walking. Pt states she tries to put it out of her mind so she can walk." (sic)); Tr. 1010 (March 19, 2010, treatment note reporting plaintiff walking "without difficulty"); Tr. 766 (April 3, 2010, consultative physical exam: "She is able to ambulate the 100 yards from the parking lot, up the four steps, and into the office without difficulty."); Tr. (May 26, 2010, physical exam: "Gait And Stance: Normal" (sic)). Indeed, in 2010, plaintiff self-reported that she did not require the use of an assistive device for ambulation. See Tr. 614, 633.

By contrast, plaintiff's medical records that post-date 2010 reflect plaintiff generally used a cane or a walker for ambulation and had an unsteady or antalgic gait. See Tr. 1196, 1274, 1308, 1458, 1461, 1464, 1467, 1470 (walker); Tr. 1196, 1276, 1279, 1369-70, 1452, 1905, 1912, 1915, 1918, 1921, 1924, 1927 (cane); Tr. 1196, 1279, 1308, 1905, 1909, 1912, 1915, 1918, 1921, 1924, 1927 (antalgic or unsteady gait). The record further reflects that the walker and the cane were both prescribed by plaintiff's podiatrist, Dr. Buchbinder. See Tr. 667, 1190, 1196. Several of Dr. Buchbinder's exam notes reported: "Ambulation required an assistive device." Tr. 1113 (September 12, 2011); Tr. 1213 (October 14, 2011); Tr. 1195 (March 20, 2012); Tr. 1295 (May 20, 2013). Additionally, several of the opinions of plaintiff's treating sources noted plaintiff's difficulty walking, see Tr. 1182, 1398, and reported that plaintiff "required" the use of a walker and/or cane to perform the activities listed in the physical capacities portion of their respective opinions, Tr. 1401, 1416, 1949 (emphasis added). Furthermore, in 2014, plaintiff testified that she required a walker when she went outside. See Tr. 193.

To the extent the ALJ relied on the opinion of the consultative examiner ("CE") to support his reliance on the opinions of the state agency consultants, the CE's opinion is

also from 2010, and thus pre-dates the onset of plaintiff's worsening symptoms. See Tr. 764-66 (April 12, 2010, Consultative Examination). "In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight because they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day." Harrington v. Colvin, No. 6:13CV1230(MAD), 2015 WL 1275337, at *7 (N.D.N.Y. Mar. 19, 2015) (citation and internal quotation marks omitted).

Otherwise, the ALJ relies on one set of records from plaintiff's course of physical therapy in 2014 to support the conclusion that plaintiff's "physical symptoms improved with physical therapy and medication." Tr. 1590 (citing Exhibits 38F and 50F, reflected at Tr. 1903-32 and repeated at Tr. 2274-99). Although those records do reflect some improvement in plaintiff's symptoms, one record also stated that plaintiff's "antalgic pattern continues to be noted." Tr. 1921. Plaintiff also reported in those records that her post-intervention pain reached levels of 6 to 7 out of 10. See Tr. 1906, 1909, 1918, 1924. Those records do not support a conclusion that plaintiff's condition had improved such that she was able to sustain the requirements of light work -- particularly in light of the other

relevant evidence of record.

The ALJ's reliance on plaintiff's "level of daily exertion[,]" including her "performing household chores, caring for herself and performing childcare at times" to support the opinions of the state agency consultants was also erroneous. Tr. 1590. <u>First</u>, "[i]t is well-settled in the Second Circuit that the capacity to care for oneself does not, in itself, contradict a claim of disability as people should not be penalized for enduring the pain of their disability in order to care for themselves." <u>Moss v. Colvin</u>, No. 1:13CV731(GHW)(MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) (citation and internal quotation marks omitted). <u>Second</u>, the ALJ's reliance on plaintiff's limited childcare activities failed to recognize the differences between occasional childcare in a home setting "and performing substantial gainful employment in the competitive workplace on a 'regular and continuing basis,' <u>i.e.</u>, '8 hours a day, for 5 days a week, or an equivalent work schedule[.]'" <u>Harris v. Colvin</u>, 149 F. Supp. 3d 435, 444 (W.D.N.Y. 2016) (quoting SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). Indeed, there "is no evidence that [plaintiff] engaged in any of these activities for sustained periods comparable to those required to hold [substantial gainful employment]." <u>Balsamo</u>, 142 F.3d at 81 (alterations added) (internal quotation

marks omitted) (quoting Carroll, 705 F.2d at 643). Third, even
if plaintiff was able to perform some household chores, "[t]here
are critical differences between activities of daily living
(which one can do at his own pace when he is able) and keeping a
full time job." Moss, 2014 WL 4631884, at *33). The ALJ did not
appreciate those differences in his decision.

Finally, given the evidence of record regarding plaintiff's
"required" use of a cane and/or walker, see Tr. 1401, 1416,
1949, the ALJ erred when he failed to determine whether the use
of those assistive devices was medically necessary, or to
otherwise evaluate and/or incorporate plaintiff's need for an
assistive device into the RFC determination. Here "the ALJ made
passing mention of Plaintiff's use of a cane," but "made no
further mention of Plaintiff's cane in the decision, failing to
include either an explicit finding as to whether the cane was
medically required or any accommodations related to
Plaintiff's cane use in the RFC finding." Scott v. Berryhill,
No. 1:17CV00468(MAT), 2018 WL 4442882, at *6 (W.D.N.Y. Sept. 17,
2018). Thus, "[t]he Court finds the ALJ's discussion of
Plaintiff's use of the cane inadequate." Id.; see also Vanever
v. Berryhill, No. 16CV1034(JWF), 2018 WL 4266058, at *2
(W.D.N.Y. Sept. 6, 2018) ("Here, there are multiple references
in the record as to plaintiff's use of a cane or walker. ...

Despite this, the ALJ never specifically explained why he did not include the use of the cane in his RFC determination. This was error."); <u>Clyburn v. Berryhill</u>, No. 16CV102(FPG), 2017 WL 6014452, at *4 (W.D.N.Y. Dec. 5, 2017) ("[T]he Court finds that the ALJ did not properly consider whether it was medically necessary for Clyburn to use a cane. Accordingly, the RFC assessment is not supported by substantial evidence and remand is required."); <u>Wright v. Colvin</u>, No. 6:13CV06585(MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) (Remand was appropriate where the "ALJ failed properly consider the medical necessity of Plaintiff using a cane.").

Moreover,

> the RFC does not address additional possible limitations that arise for someone who requires the aid of a cane when ambulating, such as how use of a cane in one's dominant hand may impact his ability to complete some of the duties of light work, such as the ability to carry items weighing up to twenty pounds with one hand while using a cane in another, and whether the need to use a cane in general could result in additional limitations on light work.

<u>Feringa v. Comm'r of Soc. Sec.</u>, No. 5:15CV785(LEK)(CFH), 2016 WL 5417403, at *7 (N.D.N.Y. Sept. 9, 2016), <u>report and recommendation adopted</u>, 2016 WL 5415780 (Sept. 28, 2016); <u>see also</u> <u>Clyde</u>, 2017 WL 6014452, at *4 ("If [plaintiff] needs to use a cane, it means that at least one hand is not free to hold other objects and perform the lifting and carrying requirements

of light work, which are not minimal."); <u>Wright</u>, 2015 WL
4600287, at *5 (same).

Accordingly, the ALJ's determination that plaintiff is
capable of light work is not supported by substantial evidence
of record. Although this finding alone warrants a remand for
further administrative proceedings, the Court will proceed to
address plaintiff's arguments concerning the ALJ's findings as
to her ability to read English, and the application of the
Grids.

### 3.  *Ability to Read English at First Grade Level*

In his RFC determination, the ALJ found that plaintiff "can
communicate in English, but can only read English at a first
grade level." Tr. 1582. Plaintiff specifically challenges the
ALJ's finding as to her reading level. <u>See</u> Doc. #32-1 at 10.
Plaintiff asserts: "There is no substantive difference between a
first grade reading level and functional illiteracy." <u>Id.</u>
Plaintiff further asserts that substantial evidence does not
support the ALJ's finding with respect to plaintiff's reading
level. <u>See</u> <u>id.</u> Defendant responds that substantial evidence
supports the ALJ's findings as to plaintiff's ability to
communicate and read in English. <u>See</u> Doc. #34-1 at 19-21. In
reply, plaintiff contends, in pertinent part, that defendant
"does not seriously challenge the Plaintiff's position that

first grade literacy equals functional illiteracy[.]" Doc. #35
at 2.

Plaintiff's arguments appear to conflate the RFC
determination and the ALJ's determination of literacy as a
vocational factor at step five. See Jimenez v. Berryhill, No.
16CV3972(DRH), 2018 WL 4054876, at *4 (E.D.N.Y. Aug. 24, 2018)
("Plaintiff argues that the ALJ found Plaintiff is illiterate
when she limited Plaintiff's ability to perform light work to
work that does not require reading or writing in English for the
performance of work tasks. However, that limitation was part of
the ALJ's RFC determination, not a determination of
literacy[.]"). In light of plaintiff's emphasis that she is
"functionally illiterate," Doc. #32-1 at 10, and her focus on
the Grids, see id. at 8-12, the Court construes this aspect of
plaintiff's argument as a step five argument that the ALJ's
determination that she is able to communicate in English is not
supported by substantial evidence of record.

A claimant's ability to communicate in English is evaluated
as a vocational factor of education at step five of the
sequential evaluation. See 20 C.F.R. §416.964; see also Durakovic
v. Comm'r of Soc. Sec., No. 3:17CV0894(TJM)(WBC), 2018 WL
4039372, at *9 (N.D.N.Y. May 30, 2018), report and
recommendation adopted, 2018 WL 4033757 (Aug. 23, 2018). The

Regulations distinguish literacy and communication as separate issues. See Afari v. Berryhill, No. 16CV595(FPG), 2017 WL 1963583, at *3 (W.D.N.Y. May 12, 2017). "The SSA's regulations define 'illiteracy' as the 'inability to read or write,' while the 'inability to communicate in English' is a separate educational factor that the SSA may consider." Id. (quoting 20 C.F.R. §§416.964(b)(1), (5)). Under the Regulations, someone is classified as illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. §416.964(b)(1). As to an ability to communicate in English, the Regulations provide: "Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor." 20 C.F.R. §416.964(b)(5).

Here, referencing 20 C.F.R. §416.964, the ALJ determined that plaintiff "has at least a high school education and is able to communicate in English[.]" Tr. 1590. Plaintiff's ability to speak and understand verbal English is well documented throughout the record. See Tr. 122, 766, 1045, 1123, 2611. Accordingly, the ALJ's finding that plaintiff is able to communicate in English is supported by the record.

More troublesome, however, is the implicit finding at step five that plaintiff is literate in the English language and the explicit finding in the RFC that plaintiff is able to "read English at a first grade level." Tr. 1582.[3] The record contains numerous references to the fact that plaintiff is unable to read English at a level which would be considered literate under the Regulations. Tr. 590 (Disability Report: "Can you read and understand English? No[.]"); Tr. 1045 ("Difficulty reading English and the native language is Spanish.") Tr. 1051 (same); Tr. 1294 (same). Plaintiff testified that if "paperwork" is in English, then she has "to find somebody to translate it because otherwise I don't understand it." Tr. 1626. Further, she stated that she has a "caseworker" who "fills out the paperwork and has to tell me where to sign." Id. Plaintiff testified that she can read traffic signs, but also stated: "You know them already. You know already what they mean because you see them everywhere." Tr. 1631. Although plaintiff testified that she could read small

---

[3] Although plaintiff has a high school education, that education was obtained in Puerto Rico. See Tr. 128, 1610. Accordingly, that plaintiff has a high school education does not necessarily compel a conclusion that plaintiff is literate in English. See Gross v. McMahon, 473 F. Supp. 2d 384, 388 (W.D.N.Y. 2007) (collecting cases); 20 C.F.R. §416.964(b) ("[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower.").

words, see Tr. 1631, in earlier testimony she stated: "I could speak [English] but I can't read. I could read it if I have a dictionary to understand why it – because I could read the sentence but I can't understand not all the words that are written there." Tr. 136 (sic); see also Tr. 175. That testimony alone does not demonstrate that plaintiff can "read or write a simple message such as instructions or inventory lists." 20 C.F.R. §416.964(b)(1); see also Campbell v. Astrue, 713 F. Supp. 2d 129, 136 (N.D.N.Y. 2010) ("[T]he Commissioner points to evidence indicating that Plaintiff could read a ruler, drive most of his life, and help his children with math problems. However, the Court notes that these activities do not demonstrate that Plaintiff has the ability to read or write a simple message such as instructions or inventory lists. Similarly, Plaintiff's admission that he could recognize certain words, falls short of the ability to read and write simple messages." (internal citations and quotation marks omitted)). Further, there is a dearth of information in the record as to plaintiff's ability to write in English. See Tr. 560 (Disability Report: "Can you write more than your name in English? No[.]").[4]

_____

[4] Plaintiff testified that her only social activity is church, and there, "they speak Spanish." Tr. 1615. She additionally arranges medical transportation in Spanish. See Tr. 1624. Many of the administrative documents contained in the record were

To the extent the ALJ found plaintiff is able to read English at a first grade level, and used that finding to support his step five findings, the ALJ drew no connection between the evidence of record and that conclusion; his reasoning in this respect is not clear. Indeed, as raised by plaintiff, several courts have acknowledged that reading at a first, second, or even third grade level could be considered functionally illiterate. See Gross, 473 F. Supp. 2d at 389 ("[A] third-grade reading level is so low that it calls into question whether plaintiff is functionally illiterate[.]"); Jackson v. Astrue, No. 8:08CV2855(JFA)(BHH), 2010 WL 500449, at *8 (D.S.C. Feb. 5, 2010) ("It is undisputed that the plaintiff is functionally illiterate, with a third grade reading level[.]"); Lee v. Astrue, No. 07CV477(CVW)(NKL), 2008 WL 320718, at *3 (W.D. Mo. Feb. 4, 2008) ("Lee is functionally illiterate, reading and writing at only a first grade level[.]"); Long v. Apfel, No. 98CV93(JHM), 2000 WL 1469542, at *5 (W.D. Va. Aug. 23, 2000) ("Educationally, the instant claimant is nearly functionally illiterate, reading at a second grade level[.]"); Lanier v. Bowen, No. 85CV2538(CSF), 1986 WL 13135, at *5 (D.N.J. Nov. 21,

_____

provided to plaintiff in both Spanish and English. See, e.g., Tr. 1-7; Tr. 271-83; Tr. 339-40; Tr. 1564-70.

1986) ("Plaintiff here is functionally illiterate, with reading and writing skills at or below a third-grade level[.]").

The ALJ's reliance on the VE's testimony at step five is also concerning. The VE testified that a hypothetical individual, with the RFC as determined by the ALJ here, could perform the jobs of "Cashier II" (DOT Code No. 211.462.010), "Fast Food Worker" (DOT Code No. 311.472-010), and "Cafeteria Attendant" (Dot Code No. 311.677-010). Tr. 1635.

The Fast Food Worker and Cashier II jobs each require a Language Level 2. See Dep't of Labor, Dictionary of Occupational Titles 183, 241 (4th ed. 1991). That calls for:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

Id. at 1011. The other job identified by the VE, a cafeteria attendant, requires a lower language level of 1. See id. at 241. That language level calls for:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

Id. at 1011. Based on _either_ of these definitions, plaintiff would be unable to perform the jobs identified by the VE given the lack of evidence regarding her ability to write in English and the substantial evidence supporting that she is functionally illiterate reading in English.

Social Security Ruling 00-4p "places an affirmative duty on the ALJ to identify and resolve any conflict between the VE's testimony and the DOT before relying on such testimony." Afari, 2017 WL 1963583, at *4 (citation and internal quotation marks omitted); see also SSR 00-4p, 2000 WL 189704, at *2 (S.S.A. Dec. 4, 2000). To resolve the apparent conflict between the VE's testimony and the DOT, the ALJ inquired of the VE: "Is your testimony consistent with the DOT?" Tr. 1636. The VE responded: "It is." Id. In further follow-up, the ALJ asked: "Could those jobs be performed if the hypothetical individual could only speak English at a sixth grade level?" Id. The VE responded: "Yes." Id.

Here, "[t]he ALJ failed to resolve the conflict at the hearing by merely asking whether the VE's testimony was consistent with the DOT without any further discussion." Afari, 2017 WL 1963583, at *4. Particularly, "the ALJ erred when he

failed to identify the apparent conflict between the jobs the VE identified and the DOT definitions that require the employee" to meet certain reading and writing requirements. Id.; see also Durakovic, 2018 WL 4039372, at *9-10. The ALJ also failed to resolve the conflict in his decision, which merely states: "I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. 1591; see Afari, 2017 WL 1963583, at *4.

Defendant contends: "Here, the ALJ specifically asked the vocational expert how she reconciled the Plaintiff's limited ability to speak English with the DOT, and the vocational expert explained that she found the GED levels to 'somewhat coordinate to ... grade levels." Doc. #34-1 at 24 (emphasis added) (citing Tr. 1639). The ALJ made no effort to ask the VE how she reconciled plaintiff's limited ability to read and write English with the DOT, a difference which both defendant and the ALJ seemed to have conflated.

Thus, for the reasons stated, substantial evidence does not support the ALJ's step five findings.

B.   Remand for Calculation of Benefits

Last, the Court considers whether a remand of this matter for the calculation of benefits is appropriate. Plaintiff

"submit[s] the Court should not force the plaintiff to a fourth ALJ hearing on essentially the same issue," and that the "Court should enter a judgment of 'disabled' and award the plaintiff benefits[.]" Doc. #32-1 at 11.

"Sentence four of 42 U.S.C. §405(g) provides that, after reviewing the Commissioner's determination, a court may: 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (quoting Sentence four of 42 U.S.C. §405(g)), as amended on reh'g in part, 416 F.3d 101 (2005). "Reversal for payment of benefits is appropriate where the existing record contains persuasive proof of disability and a remand for further proceedings would serve no further purpose." Saxon v. Astrue, 781 F. Supp. 2d 92, 106 (N.D.N.Y. 2011) (citation and internal quotation marks omitted); see also Munford v. Apfel, No. 97CV5270(HB), 1998 WL 684836, at *2 (S.D.N.Y. Sept. 30, 1998) ("[T]he determination of whether a remand would serve no purpose is a forward-looking analysis. That is, the district court evaluates whether it would be pointless to remand a case since the totality of evidence the ALJ will consider suggests only one result."). "[L]ength of time is certainly a relevant factor in

the determination of whether to remand for further proceedings or remand solely to calculate benefits." Talanker v. Barnhart, 487 F. Supp. 2d 149, 160 (E.D.N.Y. 2007); see also Munford, 1998 WL 684836, at *2. ("The 'no purpose' remand, moreover, is grounded in equitable considerations and is often deployed where prior administrative proceedings and litigation have consumed an inordinate length of time.").

Both the record before the Court and the inordinate length of time that plaintiff's application has been pending persuade the Court that a remand for a calculation of benefits is appropriate. Plaintiff filed her application for benefits nearly nine years ago on December 18, 2009. See Tr. 203; Tr. 215. This matter has had four administrative hearings spanning the course of six years. See Tr. 97-202; Tr. 1603-41. There have been three ALJ decisions issued. See Tr. 97-118; Tr. 228-251; Tr. 1571-1602. This matter has been remanded once by the Appeals Council prior to reaching district court review, see Tr. 252-56, Tr. 402-11, and has already been voluntarily remanded by this Court on a prior occasion, see Tr. 1678-88, 1712-32. The Commissioner has now tried on three occasions to meet her burden and has failed. It is time for this matter to come to a close. See Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) ("Because the Commissioner failed to introduce evidence sufficient to sustain

his burden on the fifth step in the case <u>sub judice</u>, remand for the sole purpose of calculating an award of benefits is mandated. Moreover, we believe this disposition to be particularly appropriate given that Curry's application has been pending more than six years and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay."), <u>superseded by statute on other grounds as stated in</u> <u>Selian v. Astrue</u>, 708 F.3d 409 (2d Cir. 2013); <u>Huhta v. Barnhart</u>, 328 F. Supp. 2d 377, 387 (W.D.N.Y. 2004) (remanding solely for calculation of benefits based on errors at step five and where application was pending more than nine years). To remand this case for an unimaginable <u>third</u> time "would result in additional and unnecessary delay[.]" <u>Orr v. Barnhart</u>, 375 F. Supp. 2d 193, 201 (W.D.N.Y. 2005).

Additionally, the record contains "persuasive proof of disability[.]" <u>Saxon</u>, 781 F. Supp. 2d at 106. The Court is persuaded, based on plaintiff's argument, and the evidence of record, that notwithstanding plaintiff's well-documented mental impairments, plaintiff "grids out" under section 201.17 of the Medical Vocational Guidelines (hereinafter referred to as the "Grids"), and that the older age category should apply. <u>See</u> Doc. #32-1 at 9-12.

The Grids "are tables that indicate proper disability determinations for different combinations of facts[.]" <u>Vega v. Harris</u>, 636 F.2d 900, 903 (2d Cir. 1981). Grid 201.17 applies to

> "younger individuals" age 45-49 who are unable to communicate in English or who are illiterate in English, whose past work was unskilled (or who had no past relevant work), or who have no transferable skills, and who are limited to a full range of sedentary work must be found disabled under rule 201.17 in Table No. 1 of appendix 2, of the Medical-Vocational Guidelines in 20 CFR part 404.

SSR 03-2P, 2003 WL 22399117, *8 n.5 (S.S.A. Oct. 20, 2003).

As an initial matter, although plaintiff was 44 years old on the date she filed her SSI application, <u>see</u> Tr. 203, this is an instance in which it is appropriate to apply the older age category applicable to Grid 201.17. At the time plaintiff filed her application, on December 18, 2009, she was 44 years old. <u>See id.</u> Plaintiff turned 45 a mere nineteen days later on January 6, 2010. <u>See id.</u> The Regulations dictate:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §416.963(1)(b). Here, in light of the other evidence of record, "the proper approach under the Secretary's

regulations would be to apply the grid as if plaintiff were age 45 at the time she filed her application[.]" <u>Rivera v. Sullivan</u>, 771 F. Supp. 1339, 1360 (S.D.N.Y. 1991).

Additionally, there is persuasive evidence of record that: (1) plaintiff, at most, is limited to sedentary work;[5] (2) she has no transferable skills;[6] (3) she is unable to perform her past relevant work as a CNA;[7] and (4) she is able to speak and understand English, but is unable to read or write in English.[8] Thus, there is persuasive proof of disability in this matter and

---

[5] <u>See</u> discussion of evidence, Section V.A.2., <u>supra</u>.

[6] Plaintiff's prior work was categorized as semi-skilled. <u>See</u> Tr. 1590. The ALJ's RFC essentially limits plaintiff to unskilled work. <u>See</u> Tr. 1582. Indeed, the jobs identified by the VE, which the ALJ adopted, are each categorized as unskilled. <u>See</u> Tr. 1591; <u>see also</u> <u>Martello v. Astrue</u>, No. 12CV215(WMS), 2013 WL 1337311, at *5 (W.D.N.Y. Mar. 29, 2013) (cashier II involves "unskilled work"); <u>Walker v. Colvin</u>, No. 5:12CV483(GLS)(ESH), 2013 WL 5434065, at *4 (N.D.N.Y. Sept. 27, 2013) (fast food worker involves work that is "unskilled"); <u>Colegrove v. Colvin</u>, 86 F. Supp. 3d 221, 223 (W.D.N.Y. 2015) (VE categorized "job of cafeteria attendant" as "unskilled."). "The Social Security Administration recognizes that an individual cannot transfer skills to unskilled work." <u>June S. v. Comm'r</u>, No. 5:17CV669(DJS), 2018 WL 3626423, at *7 (N.D.N.Y. July 27, 2018) (internal quotation marks and citation omitted). Thus, it reasonably follows that plaintiff does not have any transferable skills.

[7] <u>See</u> Tr. 1634-35 (VE testimony that plaintiff's prior work as a CNA "is medium work" and that a hypothetical claimant with the RFC determined by the ALJ could not perform plaintiff's past work); Tr. 704-05 (VE interrogatory).

[8] <u>See</u> discussion of evidence, section V.A.3., <u>supra</u>.

a remand for further administrative proceedings would result in additional and unnecessary delay. Accordingly, a remand solely for the calculation of benefits is warranted.

## VI. <u>CONCLUSION</u>

For the reasons stated, defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #34**] is **DENIED**, and plaintiff's Motion for Order of Reversal, or in the Alternative Remand for Further Proceedings [**Doc. #32**] is **GRANTED.** The Court **REVERSES** the decision of the Commissioner and hereby **REMANDS** this matter for a calculation and award of benefits.

SO ORDERED at New Haven, Connecticut, this 8th day of November, 2018.

                    /s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE